2008 ND 223

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Luke URAN, Defendant and Appellant.**

**No. 20080111.**

Supreme Court of North Dakota.

Dec. 16, 2008.

Jeffrey R. Ubben, Assistant State's Attorney, Bismarck, ND, for plaintiff and appellee.

Chad R. McCabe, McCabe Law Firm, Bismarck, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Luke Uran appealed from an order deferring imposition of sentence entered subsequent to his conditional guilty plea to possession of drug paraphernalia. On appeal, Uran argues the district court erred when it denied his motion to suppress evidence found during a search of his residence, contending the evidence was confiscated during an unlawful search which violated the Fourth Amendment of the United States Constitution. We affirm, holding the search was lawful as it was conducted following freely given consent, and did not exceed the scope of that consent.

I.

[¶ 2] At approximately 3:45 a.m. on April 5, 2007, Officers Andy Zachmeier and Preston McKay of the Bismarck Police Department responded to a local residence after receiving a report about a possible fight on the premises. After knocking on the front door, the officers were greeted by Rick Haugen, one of the three renters of the home, who allowed them entry into the residence. The house was a "split type of duplex" with an upstairs area and a downstairs area. The officers informed Haugen why they were there, and he granted them permission to conduct a search. While Officer McKay could not recall whether the consent was specific to any particular part of the home, Officer Zachmeier testified the consent given was "just to check the upstairs bedrooms for anybody being in them." Officer Zachmeier further stated he did not recall specifically receiving permission to search the downstairs area. However, both officers would later testify that the purpose for searching the house was to both look for potential assault suspects, and to check the welfare of any possible assault victims in the house, and Officer Zachmeier testified

their investigation would not have been complete had they limited their search to the upstairs area of the residence.

[¶ 3] The officers searched the upstairs level and found two individuals sleeping who were later identified as the other two renters of the home, one of whom was Luke Uran. The officers then proceeded to the downstairs level where they found another individual sleeping. While downstairs, Officer McKay glanced into the kitchen and saw a "multicolored smoking device that had a white pen tube attached to it." He also noticed a "large dark-colored smoking device . . . and also another multicolored glass device that appeared to have some residue on it." Officer McKay testified that, from his experience as a law enforcement officer, he identified these objects as items commonly used to smoke marijuana. Shortly thereafter, Officer McKay noticed another such object through an open closet door in a nearby bedroom. The officers gathered the three renters together and asked them permission to search the house. Officer McKay testified he reminded the renters they were under no obligation to allow the search; however, all three renters—including Uran—signed written consent forms. The officers conducted another search through the residence, and while in Uran's bedroom found a "small, broken, multicolored device with black electrical tape on it . . . [with] burnt residue and also smelled strongly of marijuana."

[¶ 4] Uran was subsequently charged with Possession of Drug Paraphernalia. Before trial, Uran moved to suppress the evidence found during the officers' search, arguing the officers exceeded the consent given for the search by going to the downstairs area of the residence. The district court denied the motion, and Uran entered a conditional guilty plea to the possession charge, reserving his right to appeal the district court's denial of the suppression motion under N.D.R.Crim.P. 11(a)(2).

## II.

[¶ 5] A trial court's decision on a motion to suppress will not be reversed if, after any conflicts in the testimony are viewed in favor of affirmance, there is sufficient, competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence. *State v. Sabinash*, 1998 ND 32, ¶ 8, 574 N.W.2d 827. This Court gives great deference to the decision of the trial court in suppression matters, as the trial court has the opportunity to observe witnesses and give weight to their credibility. *State v. Brown*, 509 N.W.2d 69, 71 (N.D.1993). Whether the officers' conduct violated constitutional prohibitions against unreasonable search and seizure is a question of law. *State v. LaFromboise*, 542 N.W.2d 110, 112 (N.D.1996).

[¶ 6] The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and Art. I, § 8, of the North Dakota Constitution protect individuals from unreasonable searches and seizures in their homes. *State v. Boline*, 1998 ND 67, ¶ 19, 575 N.W.2d 906. Warrantless searches and seizures inside a home are presumptively unreasonable. *City of Fargo v. Lee*, 1998 ND 126, ¶ 8, 580 N.W.2d 580 (citing *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 1379–80, 63 L.Ed.2d 639, 650 (1980)). However, a warrantless search of a home is not unreasonable if the search falls under an exception to the search warrant requirement. *State v. Matthews*, 2003 ND 108, ¶ 10, 665 N.W.2d 28. One such exception is consent to the search, given free from explicit or covert coercion. *State v. Guthmiller*, 2004 ND 100, ¶ 5, 680 N.W.2d 235.

[¶ 7]   In the present case, it is undisputed that Haugen gave the officers consent to search for individuals in the house.   At issue is whether the officers exceeded the consent given to them by searching the downstairs level.   The scope of consent is measured objectively by what a reasonable person would have understood by the exchange between the police and the suspect.   *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991); *State v. Mitzel*, 2004 ND 157, ¶ 13, 685 N.W.2d 120.   In *Jimeno*, the United States Supreme Court considered whether consent given to search a vehicle extended to containers within the car.   500 U.S. at 251, 111 S.Ct. 1801.   In determining what a reasonable person would have understood by the exchange between the officer and the suspect, the Court noted the officer told the suspect he believed the suspect was carrying narcotics, and would be looking for narcotics in the vehicle.   *Id.* The Court held it was objectively reasonable for the police to conclude that general consent to search the car included consent to search containers within the car, as a reasonable person may be expected to know that narcotics are generally carried in some form of container.   *Id.* While the Court noted that a suspect may "delimit as he chooses the scope of the search to which he consents … if his consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization." *Id.* at 252, 111 S.Ct. 1801.

[¶ 8]   Here, a reasonable person would conclude the consent given by Haugen extended to the entire residence.   Just as the *Jimeno* officers told the suspect what they were searching for, Officers McKay and Zachmeier told Haugen they intended to search for individuals in the house, to assess whether there were any potential assault victims or suspects inside.   Furthermore, just as a reasonable person would know the narcotics in *Jimeno* could be stored in containers, here a reasonable person would know that an individual involved in a reported fight would just as likely be found in the downstairs area as they would on the upstairs level.   As Officer Zachmeier testified, the officers' investigation into the assault would not have been complete had the officers not searched for individuals on the downstairs level as well.   Under the evidence in this case, a reasonable person would believe that two officers looking for people in connection with an assault would not stop their search after only looking through half of the house, and therefore a reasonable person would interpret the consent given by Haugen to the officers as encompassing the entire residence.

[¶ 9]   We hold a reasonable person would have understood the communication between Haugen and the officers as extending consent to search the entire residence-including the downstairs area.   Because of our holding we do not determine whether the subsequent written consent to search given by Uran and his fellow renters was voluntary.   We conclude the district court did not err in denying Uran's motion to suppress, and we affirm.

[¶ 10] DALE V. SANDSTROM, DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.