2017 ND 56

**STATE of North Dakota, Plaintiff and Appellant**

**v.**

**Jeremy Allen KAUL, Defendant and Appellee**

No. 20160149

Supreme Court of North Dakota.

Filed 3/13/2017

Tessa M. Vaagen, Assistant State's Attorney, Burleigh County State's Attorney, 514 East Thayer Avenue, Bismarck, ND 58501, for plaintiff and appellant.

William R. Thomason, 418 East Rosser Avenue, Suite 320, Bismarck, ND 58501, for defendant and appellee.

Kapsner, Justice.

[¶ 1] The State appeals from a district court order granting Jeremy Kaul's motion to suppress evidence. We affirm.

I

[¶ 2] On March 18, 2015, officers executed a probation search at the residence of Keirsten Thomas. While speaking with officers, Thomas indicated some paint in the home belonged to Jeremy Kaul. As officers continued their search, officers heard movement of the door handle. The door to the residence had been locked after the officers entered and commenced the probation search. Hearing the noise, an officer opened the door to see Kaul standing in the doorway. The officer identified himself and told Kaul he was going to be detained because they were doing a probation search. Kaul entered the apartment and officers spoke with him and asked for consent to search his person and vehicle. Kaul consented to both and officers searched his person and vehicle, but did not find any contraband. Kaul was asked to consent to a search of his backpack which he refused. Officers requested a K–9 unit to conduct a sniff of Kaul's backpack because he was acting "extremely nervous," and the officer knew Kaul to be a "methamphetamine user, [and] a marijuana user." Roughly fifteen minutes later, the K–9 unit arrived and the dog alerted on Kaul's backpack. Kaul was asked for consent to search his backpack again, and he again refused. Officers seized the backpack, told Kaul he could leave, and Kaul left. Officers applied for and were granted a search warrant for Kaul's backpack. Officers found methamphetamine and drug paraphernalia in Kaul's backpack when they executed the search warrant.

[¶ 3] Kaul was charged with possession of methamphetamine, two counts of possession of drug paraphernalia, and possession of a controlled substance. Kaul filed a motion to suppress evidence, and the State opposed the motion. The district court held a hearing on the suppression motion at which an officer testified. After both parties questioned the officer, the district court asked several of its own questions. After post-hearing briefs, the district court granted Kaul's motion to suppress. The State appealed.

## II

[¶ 4] On appeal, the State argues the district court erred by granting Kaul's motion to suppress evidence. The Fourth Amendment to the United States Constitution, applicable to the states under the Fourteenth Amendment, and Article I, section 8, of the North Dakota Constitution, protect individuals from unreasonable searches and seizures. State v. Matthews, 2003 ND 108, ¶ 9, 665 N.W.2d 28.

[¶ 5] This Court reviews a district court's decision on a motion to suppress as follows:

[W]e give deference to the district court's findings of fact and we resolve conflicts in testimony in favor of affirmance. State v. Tognotti, 2003 ND 99, ¶ 5, 663 N.W.2d 642. We "will not reverse a district court decision on a motion to suppress . . . if there is sufficient competent evidence capable of supporting the court's findings, and if the decision is not contrary to the manifest weight of the evidence." State v. Gefroh, 2011 ND 153, ¶ 7, 801 N.W.2d 429. Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law. Id.

State v. Reis, 2014 ND 30, ¶ 8, 842 N.W.2d 845. Whether law enforcement violated constitutional prohibitions against unreasonable search and seizure is a question of law. State v. Uran, 2008 ND 223, ¶ 5, 758 N.W.2d 727.

[¶ 6] Neither party disputes Kaul was seized immediately after coming into contact with officers. The parties dispute whether the seizure was unreasonable under the Fourth Amendment. The United States Supreme Court has stated, "the general rule [is] that Fourth Amendment seizures are reasonable only if based on probable cause to believe that the individual has committed a crime." Bailey v. United States, — U.S. —, 133 S.Ct. 1031, 1037, 185 L.Ed.2d 19 (2013). The State contends Kaul's seizure was lawful based on an exception to this general rule. The State relies upon the United States Supreme Court's decisions in Michigan v. Summers, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), Muehler v. Mena, 544 U.S. 93, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005), and Bailey, 133 S.Ct. 1031, to support its position.

[¶ 7] The United States Supreme Court has recognized "there is some latitude for police to detain where the intrusion on the citizen's privacy was so much less severe than that involved in a traditional arrest that the opposing interests in crime prevention and detection and in the police officer's safety could support the seizure as reasonable." Bailey, 133 S.Ct. at 1037. In Summers, the Supreme Court held "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." 452 U.S. at 705, 101 S.Ct. 2587. In Muehler, 544 U.S. at 98, 125 S.Ct. 1465, the Supreme Court discussed the reasoning behind its holding in Summers:

We made clear that the detention of an occupant is surely less intrusive than the search itself, and the presence of a warrant assures that a neutral magistrate has determined that probable cause exists to search the home. Against this incremental intrusion, we posited three legitimate law enforcement interests that provide substantial justification for detaining an occupant: preventing flight in the event that incriminating evidence is found; minimizing the risk of harm to the officers; and facilitating the orderly completion of the search, as detainees' self-interest may induce them to open locked doors or locked containers to avoid the use of force.

(Citations omitted). The Supreme Court further stated, "[a]n officer's authority to detain incident to a search is categorical; it does not depend on the quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure." Id. "Because this exception grants substantial authority to police officers to detain outside of the traditional rules of the Fourth Amendment, it must be circumscribed." Bailey, 133 S.Ct. at 1042.

[¶ 8] The United States Supreme Court had occasion to circumscribe the limits of this exception in a geographic sense. In Bailey, two individuals were seen driving away from a residence for which officers had obtained a search warrant. 133 S.Ct. at 1036. Officers stopped the vehicle a mile away and one individual identified himself and stated he was coming from his home at the address identified in the search warrant. Id. Officers detained the men "incident to the execution of a search warrant." Id. at 1037. The Supreme Court determined the seizure was not justified under the Summers exception because the occupant had left the immediate vicinity of the premises to be searched. Id. at 1043. The Supreme Court reasoned, "[w]ere police to have the authority to detain those persons away from the premises, the authority to detain incident to the execution of a search warrant would reach beyond the rationale of ensuring the integrity of the search by detaining those who are in fact on the scene." Id. at 1039. The Supreme Court did not specifically address the meaning of "immediate vicinity" aside from stating "[i]n closer cases courts can consider a number of factors ... including the lawful limits of the premises, whether the occupant was within the line of sight of his dwelling, the ease of reentry from the occupant's location, and other relevant factors." Id. at 1042.

[¶ 9] While Bailey put loose geographic limits upon this exception to the general rule, the presence of two distinct facts exist in Summers, Muehler, and Bailey: (1) officers in all three cases were executing a search warrant; and (2) the individual detained was an occupant of the residence to be searched. The district court noted the absence of both facts was relevant to its decision:

First, the justifications used to support detainment of an occupant when executing a search warrant do not apply with equal force when the justification for the search is a probationary condition and not a valid search warrant. Second, when the individual detained at the scene is a non-occupant visitor arriving after the search has begun, the Fourth Amendment intrusion is not a slightly greater intrusion than that justified by a search warrant because no search warrant exists and the visitor is not subject to the probation conditions.

Professor LaFave has characterized the Summers exception in this way: "police may always detain persons found at the premises named in a search warrant, provided (i) the warrant authorizes a 'search for contraband' and (ii) the persons detained are 'occupants.'" 2 Wayne R. LaFave, Search and Seizure § 4.9(e) (5th ed. 2012) (emphasis in original). Professor LaFave indicates some courts have said existence of a search warrant is essential "so that no comparable authority exists incident to a lawful but warrantless search of premises for contraband. Commonwealth v. Rodriquez, 532 Pa. 62, 614 A.2d 1378 (1992) (noting Summers says that 'of prime importance in assessing the intrusion is the fact that the police had obtained a warrant to search respondent's house for contraband')." 2 Wayne R. LaFave, Search and Seizure § 4.9(e), n.140. In Hovington v. State, 616 A.2d 829, 832 (Del.1992), the court opined that Summers also "applies

to the execution of a warrant to arrest someone for a narcotics violation" in supporting its conclusion police could pursue the fleeing companion of two people named in arrest warrants. Professor LaFave notes this extension of the rule was probably unnecessary given the fact the fleeing individual ran, discarded objects while running, and other factors were present supporting probable cause to arrest the individual anyway. See 2 Wayne R. LaFave, Search and Seizure § 4.9(e), n.140.

[¶ 10] This Court, should it determine Summers applies to this case, would need to extend the rule to probationary searches. This Court has previously stated a probationary search condition "furthers two of the primary goals of probation, rehabilitating the offender and protecting society from future criminal violations." State v. Gonzalez, 2015 ND 106, ¶ 23, 862 N.W.2d 535. It is worth noting Kaul was not the subject of the probationary search.

[¶ 11] Professor LaFave notes, "[e]specially because the Court elsewhere refers to the category of persons covered as 'residents' who would ordinarily 'remain in order to observe the search of their possessions,' it would seem that the word 'occupants' is not to be loosely construed as covering anyone present, but instead is to be interpreted literally." 2 Wayne R. LaFave, Search and Seizure § 4.9(e). Courts have noted this distinction. See United States v. Reid, 997 F.2d 1576,1579 (D.C. Cir. 1993) (government's reliance on Summers rejected, as defendant "was not a resident of the apartment which was to be searched under the warrant" but only a visitor) (emphasis in original); State v. Torres, 197 Conn. 620, 500 A.2d 1299, 1301 (1985) (Summers not applicable, as "the defendant was a visitor to [the residence subject to search warrant] and not an 'occupant'"); Commonwealth v. Catanzaro, 441 Mass. 46, 803 N.E.2d 287, 291–

92 (2004) (woman detained had previously asserted "[t]hat's my apartment," and thus sufficient showing she was an occupant, meaning one "who has possessory rights in, or control over, certain property"). We decline to expand the meaning of "occupants" under Summers to a person approaching the premises as a visitor.

[¶ 12] The district court applied the three factors delineated by Summers to the facts present in the case. The district court found the first factor, "preventing flight in the event that incriminating evidence is found," was not applicable to the case. To support this finding, the district court noted officers permitted Kaul to leave after they seized his backpack. The district court found the second factor, officer safety, was present, but did not justify the seizure on its own. The district court reasoned because the officer testified the apartment door was locked to ensure officer safety, but unlocked the door to allow Kaul to enter, it was clear neither Kaul nor his backpack posed a threat to officer safety. The district court also determined orderly completion of the search did not justify Kaul's detention because the officers let Kaul leave before the search was completed. In light of this, the district court concluded the intrusion was not slight because no search warrant existed. The district court concluded, "it is a much greater intrusion that cannot be justified by another individual's probation conditions." We agree.

[¶ 13] The district court did not err by concluding the factors justifying the seizure of occupants contemporaneously with execution of a valid search warrant do not apply to Kaul's initial seizure. The record indicates Kaul was not an occupant of the residence belonging to the individual who was the subject of the probationary search. At most, Kaul was a frequent visitor.

[¶ 14] The <u>Summers</u> rule permitting detention of an occupant incident to the execution of a search warrant "is categorical; it does not depend on the quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure." <u>Muehler</u>, 544 U.S. at 98, 125 S.Ct. 1465. Because the <u>Summers</u> rule "grants substantial authority to police officers to detain outside of the traditional rules of the Fourth Amendment, it must be circumscribed." <u>Bailey</u>, 133 S.Ct. at 1042. We hold the <u>Summers</u> rule does not apply to a seizure of a non-occupant incident to another individual's probationary search.

### III

[¶ 15] The State alternatively argues officers had reasonable suspicion to detain Kaul while waiting for the K–9 unit to arrive. In support of this argument, the State contends officers knew these facts:

1) they were searching a house of a known drug dealer [ ]; 2) Thomas informed the officers that Kaul kept some of his belongings in the apartment [ ]; 3) Thomas informed the officers that Kaul came and went from the residence [ ]; 4) Detective Seeklander was familiar with Kaul from prior narcotics investigations [ ]; 5) Kaul gave consent to search his person and vehicle, but acted extremely nervous when officers asked to search his backpack [ ].

The State contends the district court only acknowledged Kaul's criminal history and nervous behavior and failed to consider the totality of the circumstances. The State argues that under <u>Terry v. Ohio</u>, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), officers could lawfully detain Kaul while waiting for the K–9 unit, which led to the seizure of the backpack.

[¶ 16] An officer must have a reasonable and articulable suspicion of criminal activity for the continued detention pending arrival of a K–9 unit. <u>See</u> <u>State v. Fields</u>, 2003 ND 81, ¶ 21, 662 N.W.2d 242. In <u>Fields</u>, the officer knew the defendant had a previous drug arrest, other officers and an informant claimed the defendant continued to sell drugs, the drug task force had information the defendant had recently received a shipment of drugs, the defendant displayed nervous behavior, and defendant gave a suspicious story about going out for milk and cereal at 3:24 a.m. <u>Id.</u> at ¶ 14. This Court determined the officer was acting on a "mere hunch" and affirmed the district court's grant of the defendant's motion to suppress. <u>Id.</u> at ¶ 21. Comparing the facts known to the officer in <u>Fields</u>, the facts available to police in this case also do not rise to the level of reasonable articulable suspicion.

[¶ 17] Considering the State's alternate argument for the continuing seizure of Kaul, the district court noted: "Here, officers knew that Kaul had previous drug convictions, that he was at the residence of an individual on probation for drug convictions, and that he was acting nervous after officers inquired about his backpack." The district court noted that each was a "legitimate" or "pertinent" factor in establishing reasonable suspicion. There is no indication the district court did not conduct a totality-of-the-circumstances analysis when it determined reasonable suspicion for continuing detention did not exist. The State has not articulated how the facts that Kaul came and went from the residence or that he had property at the residence would add to the suspicion of criminal activity at the time of Kaul's continued detention. The district court did not err in holding there was no reasonable and articulable suspicion to support the continued detention of Kaul while waiting for the K–9 unit.

### IV

[¶ 18] Based upon a review of the record and the order granting suppression, there

**358**

is "sufficient competent evidence capable of supporting the court's findings," and "the decision is not contrary to the manifest weight of the evidence." Gefroh, 2011 ND 153, ¶ 7, 801 N.W.2d 429. The district court did not err as a matter of law when it declined to extend the Summers exception to the facts of Kaul's case. We affirm the district court's order granting Kaul's motion to suppress evidence.

[¶ 19] Carol Ronning Kapsner

Lisa Fair McEvers

Daniel J. Crothers

Benny A. Graff, S.J.

[¶ 20] The Honorable Benny A. Graff, S.J., sitting in place of Sandstrom, J., disqualified.

[¶ 21] The Honorable Jerod E. Tufte was not a member of the Court when this case was heard and did not participate in this decision.

VandeWalle, Chief Justice, concurring specially.

[¶ 22] I believe this is a close case but I defer to our standard of review and the wisdom of my colleagues and I concur in the result. However, I write specially to note the issue of the trial court's consideration of the totality of the circumstances. In the words of the majority opinion: "The district court noted that each was a 'legitimate' or 'pertinent' factor in establishing reasonable suspicion. There is no indication the district court did not conduct a totality-of-the-circumstances analysis when it determined reasonable suspicion for continuing detention did not exist." My concern lies in the fact that it appears the district court's analysis, and the majority's approval thereof, may lead to the conclusion that if none of the factors considered in the analysis rise to the level of reason-

able suspicion, the sum total of those factors cannot do so. That is not my understanding of the application of the totality-of-the-circumstances analysis and I would not join in that conclusion. Rather, in some instances, the total may be greater than the sum of its parts.

[¶ 23] Gerald W. VandeWalle, C.J.