2017 ND 135

**CITY OF GRAND FORKS,**
Plaintiff and Appellee

v.

**Kevin Jason REILLY, Defendant
and Appellant**

No. 20160323

Supreme Court of North Dakota.

Filed 6/7/2017

Sarah W. Gereszek, Grand Forks, ND, for plaintiff and appellee.

Mathew V. Jensen (on brief) and Tyler J. Morrow (argued), Grand Forks, ND, for defendant and appellant.

Crothers, Justice.

[¶ 1] Kevin Reilly appeals a criminal judgment entered after conditionally pleading guilty to having actual physical control of a vehicle while under the influence of alcohol. Reilly reserved the right to appeal the district court's denial of his motion to suppress evidence and dismiss his case. Reilly argues the district court erred in denying his motion by ruling the stop was a casual encounter and did not violate his Fourth Amendment rights. We affirm.

I

[¶ 2] In March 2016 Grand Forks Police Corporal Robert Buelow and Officer Daniel Essig received a call from dispatch of a possible drunk driver, describing the color of the vehicle, the license plate number and the area the vehicle was last seen. The officers located the vehicle, parked with its headlights on, at the apartment building of the vehicle's registered owner. The officers parked about 20–30 feet away from the vehicle and did not activate the overhead lights. Buelow testified he observed Reilly

stumble and regain his balance while getting out of the vehicle. Buelow attempted to get his attention by saying, "Excuse me, sir," but Reilly kept walking towards the apartment door. Buelow ran ahead of Reilly to meet him on the sidewalk. Buelow did not know whether Reilly was intentionally ignoring him.

[¶ 3] When Buelow was in front of Reilly, Buelow asked if he was okay, but Reilly did not verbally answer. According to Buelow, he "explained to [Reilly] that he got called in as a possible drunk driver. [Reilly] shook his head and kind of shrugged his shoulders." Reilly was observed swaying and smelled of alcohol. Buelow asked him for his driver's license. Reilly took out his driver's license but, instead of handing it to Buelow, he began arguing about the stop. According to Buelow, Reilly's speech was slurred and he was not making complete sentences. Buelow took the license and after identifying Reilly brought him to the squad car for field sobriety tests. Reilly was charged with having actual physical control of a vehicle while under the influence of alcohol.

[¶ 4] Reilly filed a motion to suppress evidence and dismiss his case, arguing he was unlawfully seized in violation of the Fourth Amendment. The City argued the officers were performing a community caretaker function when approaching Reilly. After a hearing, the district court entered an order denying Reilly's motion to suppress evidence and dismiss. The district court determined the officers were not acting in the community caretaker role but Reilly's Fourth Amendment rights were not violated. The district court ruled the officers did not threaten Reilly with a show of authority and reasonable suspicion existed. Reilly conditionally pled guilty, reserving his right to appeal the district court's order denying his motion to suppress evidence and dismiss. Reilly appeals.

## II

[¶ 5] Reilly argues the district court erred in denying his motion to suppress evidence and dismiss his case. This Court applies a deferential standard when reviewing a district court's decision on a motion to suppress:

> "[W]e give deference to the district court's findings of fact and we resolve conflicts in testimony in favor of affirmance. *State v. Tognotti*, 2003 ND 99, ¶ 5, 663 N.W.2d 642. We 'will not reverse a district court decision on a motion to suppress ... if there is sufficient competent evidence capable of supporting the court's findings, and if the decision is not contrary to the manifest weight of the evidence.' *State v. Gefroh*, 2011 ND 153, ¶ 7, 801 N.W.2d 429. Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law. *Id.*"

*State v. Kaul*, 2017 ND 56, ¶ 5, 891 N.W.2d 352 (quoting *State v. Reis*, 2014 ND 30, ¶ 8, 842 N.W.2d 845).

[¶ 6] Reilly argues the district court erred in determining the stop was a casual encounter that did not violate his Fourth Amendment rights. The Fourth Amendment prohibits unreasonable searches and seizures. *Abernathey v. Department of Transp.*, 2009 ND 122, ¶ 8, 768 N.W.2d 485. "A temporary restraint of a person's freedom, or a 'Terry stop,' is a seizure within the meaning of the Fourth Amendment." *City of Jamestown v. Jerome*, 2002 ND 34, ¶ 5, 639 N.W.2d 478 (citing *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). A "Terry Stop" must be supported by reasonable and articulable suspicion of criminal activity. *Richter v. North Dakota Dept. of Transp.*, 2010 ND 150, ¶ 9, 786 N.W.2d 716. "[A] person has been seized within the meaning of the Fourth Amendment only if,

in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* at ¶ 10 (citations and quotation marks omitted).

[¶ 7] "[N]ot all personal intercourse or communications between law enforcement officers and citizens involve seizures implicating Fourth Amendment rights." *City of Jamestown v. Jerome*, 2002 ND 34, ¶ 5, 639 N.W.2d 478. "For example, a community caretaking encounter does not constitute a seizure within the meaning of the Fourth Amendment." *Id.* In *State v. Langseth*, 492 N.W.2d 298, 300 (N.D. 1992), this Court held an officer's approach of a parked vehicle is not a seizure if the officer "inquires of the occupant in a conversational manner, does not order the person to do something, and does not demand a response." Further, this Court has held it is not a seizure for an officer to walk up to and talk to a person in a public place. *State v. Steinmetz*, 552 N.W.2d 358, 360 (N.D. 1996). "A seizure occurs within the context of the Fourth Amendment only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Jerome*, 2002 ND 34, ¶ 5, 639 N.W.2d 478.

[¶ 8] Here, the district court determined the community caretaker function did not apply. "The community caretaking function is an activity 'totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.'" *City of Jamestown v. Jerome*, 2002 ND 34, ¶ 8, 639 N.W.2d 478 (quoting *State v. Langseth*, 492 N.W.2d 298, 300 (N.D. 1992)). Here, the record supports Buelow's approach of Reilly was to investigate the possibility of a law violation. The district court did not err in ruling the officers were not acting in a community caretaking role.

[¶ 9] The district court further found Reilly's Fourth Amendment rights were not violated when the officers approached him as he was walking to his apartment building, explaining:

"Cpl. Buelow approached Reilly only after he observed him stumble out of the parked vehicle, regain his balance, and start walking toward his apartment building. Officer Essig did not activate the emergency lights when he pulled into the parking lot, and he did not block in the green pickup. There is no evidence that either officer threatened Reilly 'with a show of authority.' Instead, Cpl. Buelow ran ahead of Reilly to meet him on the sidewalk after Reilly ignored Cpl. Buelow's attempt to gain his attention. It was at this point that Cpl. Buelow detected an odor of an alcoholic beverage coming from Reilly, noticed Reilly sway as they conversed, and observed that Reilly's speech was slurred. These observations, along with the report of the drunk driver operating the green pickup that Reilly had just exited, created reasonable suspicion that Reilly was in actual physical control of a motor vehicle while impaired."

(Internal citation omitted).

[¶ 10] Reilly argues the district court erred by concluding this case was a casual encounter because he did not agree to speak with the officers, but instead turned and walked away when the officers attempted to get his attention. Reilly asserts the encounter was a "forced encounter" and was escalated to a seizure when the officers threatened him with a show of authority. Reilly argues the presence of two officers and Buelow running after him escalated the situation from a casual encounter to a seizure. Reilly contends he was seized the moment Buelow was in front of him.

[¶ 11] The issue in this case is when Reilly was seized and whether, at the moment he was seized, reasonable articulable suspicion supported the seizure. Buelow did not need a reasonable and articulable suspicion to approach Reilly as he exited his vehicle. *See State v. Steinmetz,* 552 N.W.2d 358, 360 (N.D. 1996) (recognizing it is not a seizure for an officer to walk up and talk to a person in a public place). Thus, we must determine whether Buelow's approach of Reilly elevated the encounter into a seizure. An officer escalates a casual encounter into a seizure by ordering a person "to do something, by demanding a response, or by threatening [him] with a show of authority or command." *City of Jamestown v. Jerome,* 2002 ND 34, ¶ 9, 639 N.W.2d 478. The district court found "[t]here is no evidence that either officer threatened Reilly 'with a show of authority.' "

[¶ 12] Here, Buelow running to get ahead of Reilly on the sidewalk does not constitute a show of authority implicating Reilly's Fourth Amendment rights. Buelow testified that when Reilly did not respond to his attempts to get his attention, Buelow "ran up, and got ahead of [Reilly,] and met [Reilly] on the sidewalk." The record does not indicate that Buelow acted in a threatening or coercive manner in attempting to get ahead of Reilly. Nothing in the record suggests the officers demanded Reilly stop walking, or shouted at Reilly beyond their initial inquiries into whether he was okay. No evidence suggests Reilly was aware the officers were approaching from behind. On these facts, merely running to get ahead of someone, without any additional threatening or coercive conduct, does not constitute a show of authority implicating the Fourth Amendment.

[¶ 13] Likewise, the mere presence of two officers did not constitute a show of authority on this record. In *Richter v. North Dakota Dept. of Transp.,* 2010 ND 150, ¶ 15, 786 N.W.2d 716, we explained our criteria when evaluating when a seizure occurs includes "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." (quoting *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). Here, the record indicates when Buelow met Reilly on the sidewalk, Essig was about 15 feet behind. While Buelow was in front of Reilly, Essig was behind Buelow and slightly to the left. There is no evidence the officers were acting in a threatening or coercive manner or that Reilly was aware two officers were present. On these facts, the presence of two officers, in and of itself, did not rise to the level of a show of authority constituting a seizure. We conclude the two officers approaching Reilly to meet him on the sidewalk did not constitute a seizure implicating the Fourth Amendment.

[¶ 14] A seizure did occur when Buelow approached Reilly and asked for his driver's license. Events leading up to the seizure show Buelow and Essig received a call from dispatch reporting a suspected drunk driver. When the officers located the vehicle, with its headlights on in the apartment building's parking lot, they observed Reilly stumble and regain his balance when exiting the vehicle. After Reilly did not respond to Buelow's attempts to ask if he was okay, Buelow ran to get ahead of Reilly and met him on the sidewalk. When Buelow was in front of Reilly, he smelled the odor of alcohol coming from Reilly and observed him swaying. At that point Buelow had observed enough to give him a reasonable and articulable

suspicion of actual physical control while under the influence of alcohol. " '[I]f an officer learns something during a public encounter with a person that causes a reasonable suspicion or probable cause, the encounter can justify further investigation, seizure, and even arrest. A public encounter does not foreclose the officer from making observations that reasonably lead to further action.' " *Abernathey v. Department of Transp.*, 2009 ND 122, ¶ 16, 768 N.W.2d 485 (quoting *State v. Franklin*, 524 N.W.2d 603, 605 (N.D. 1994)). "A law enforcement officer has a reasonable and articulable suspicion that a law has been or is being violated if a reasonable person in the officer's position would be justified by some objective manifestation to suspect potential criminal activity." *Id.*

[¶ 15] Under these circumstances, Buelow had a reasonable and articulable suspicion that Reilly was in actual physical control of a vehicle while under the influence of alcohol before Buelow asked Reilly to provide his driver's license. We conclude Reilly's Fourth Amendment rights were not violated. The district court did not err in denying Reilly's motion to suppress evidence and dismiss his case.

### III

[¶ 16] We affirm the criminal judgment.

[¶ 17] Daniel J. Crothers

Lisa Fair McEvers

Carol Ronning Kapsner

Jerod E. Tufte

Gerald W. VandeWalle, C.J.