2017 ND 264

**Phillip Galen MARTINSON, Appellant**

v.

**Grant LEVI, Director, North Dakota Department of Transportation, Appellee**

No. 20170175

Supreme Court of North Dakota.

Filed 11/16/2017

Luke T. Heck, Fargo, ND, for appellant.

Michael T. Pitcher, Assistant Attorney General, Bismarck, ND, for appellee.

VandeWalle, Chief Justice.

[¶ 1] Phillip Galen Martinson appealed from a district court judgment affirming an agency decision to suspend his driver's license for 180 days for being in actual physical control of a motor vehicle while under the influence of intoxicating liquor, a class C felony. Because Martinson was not unlawfully seized and his driveway was within the scope of the statute, we affirm.

I

[¶ 2] On May 27, 2016, Martinson was arrested by Sergeant Ruelle of the Minot Police Department for being in actual physical control of a motor vehicle while under the influence of intoxicating liquor. Sergeant Ruelle responded to an anonymous report of erratic driving; the caller provided the license plate number and identifying vehicle information. Sergeant Ruelle obtained the address of the registered owner of the vehicle and arrived there shortly after the tip was received.

[¶ 3] Upon arriving at the address, Sergeant Ruelle observed an individual in the vehicle matching the license plate from the anonymous tip. A backup officer, Officer Wheeler, arrived at the residence at the same time. Sergeant Ruelle and Officer Wheeler approached the individual, later identified as Martinson, as he exited the vehicle and began walking towards the residence. Sergeant Ruelle called to Martinson to get his attention. Martinson responded along the lines of "what's going on ... what's up." Sergeant Ruelle informed Martinson he was responding to a report of a possible intoxicated driver matching the license plate of the car in Martinson's driveway. Martinson said he had not been driving for several hours and had gone out to his vehicle to retrieve his wallet.

[¶ 4] Sergeant Ruelle observed an open can of Bud Light beer in the vehicle which Martinson claimed was empty. Sergeant Ruelle also observed Martinson having trouble standing and his speech was slurred. Martinson claimed to have only had two beers in the last three hours and consented to a horizontal gaze nystagmus (HGN) test where Sergeant Ruelle observed six out of six indicators of impairment. Sergeant Ruelle asked Martinson if he would come back to the patrol vehicle and Martinson consented. Martinson also consented to a pat-down before sitting down in the passenger seat of the patrol vehicle. The pat-down revealed a set of keys later identified as the vehicle keys.

Sergeant Ruelle asked Martinson to take a breath test, which Martinson initially consented to, but withdrew consent after seeking clarification.

[¶ 5] Martinson was arrested for actual physical control. The bases for the arrest were Sergeant Ruelle's observation of Martinson's poor balance, slurred speech, bloodshot watery eyes, the results of the HGN test, the odor of alcohol coming from Martinson, and Martinson's admission to driving within the time frame of drinking.

[¶ 6] Martinson was read the North Dakota consent advisory and acknowledged understanding it. Martinson consented to a blood draw. The blood draw showed an alcohol concentration of at least eight one-hundredths of one percent by weight.

[¶ 7] Martinson requested an administrative hearing. The hearing officer found that Sergeant Ruelle did not stop or seize Martinson when he approached him and spoke with him in the driveway of Martinson's residence nor when he asked to speak with him in the patrol car. Moreover, the hearing officer found that even if Martinson was detained, Sergeant Ruelle had a reasonable and articulable basis to investigate further based on his observations of Martinson. The hearing officer ordered Martinson's license to be suspended for 180 days. Martinson subsequently requested judicial review of the hearing officer's decision by the Ward County District Court in accordance with N.D.C.C. § 39-08-01. The district court affirmed the agency's decision.

II

[¶ 8] Martinson argues he was unlawfully seized when the officers approached Martinson in his driveway because they lacked reasonable suspicion of criminal activity.

[¶ 9] The Administrative Agencies Practice Act, N.D.C.C. ch. 28-32, governs this Court's review of the Department of Transportation's administrative decision to suspend or revoke a driver's license. *Potratz v. N.D. Dep't of Transp.*, 2014 ND 48, ¶ 7, 843 N.W.2d 305. Under N.D.C.C. § 28-32-46, this Court must affirm the agency's decision unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

This Court has explained:

When reviewing an administrative agency's decision, we determine only whether a reasoning mind reasonably could have concluded the findings were supported by the weight of the evidence from the entire record. This Court does not make independent findings or substitute its judgment. Once the facts are established, their significance presents a

question of law, which we review de novo. Our standard of review for a claimed violation of a constitutional right is de novo.

*McCoy v. N.D. Dep't of Transp.*, 2014 ND 119, ¶ 8, 848 N.W.2d 659 (citations and internal quotations omitted).

[¶ 10] In *Richter v. N.D. Dep't of Transp.*, 2010 ND 150, ¶ 15, 786 N.W.2d 716, we explained our criteria in evaluating when a seizure occurs includes "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." (quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)).

[¶ 11] In *Reilly*, the Grand Forks Police Department received a call about a possible drunk driver. *City of Grand Forks v. Reilly*, 2017 ND 135, ¶ 2, 895 N.W.2d 322. Two officers located the vehicle at the apartment building of the vehicle's registered owner. *Id.* Upon seeing Reilly exit the vehicle, an officer tried to get his attention by saying "Excuse me, sir" but Reilly kept walking towards his residence. *Id.* The officer ran up ahead of him because he could not get Reilly's attention. *Id.* Reilly was observed swaying and smelled of alcohol. *Id.* at ¶ 3. Reilly was ultimately arrested and convicted of being in actual physical control of a vehicle while under the influence of alcohol. *Id.* Reilly appealed, arguing he was unlawfully seized when he was approached by the officers. *Id.* at ¶ 4. However, there was no evidence of any threatening or coercive conduct, the officers did not demand Reilly stop walking, and the officers did not engage their flashers. *Id.* at ¶ 12. Accordingly, we found the officer's running up ahead of Reilly did not constitute a show of authority implicating the Fourth Amendment. *Id.*

[¶ 12] In this case, officers received a call about a possible drunk driver, located the vehicle at the home of the registered owner, and witnessed Martinson exiting the vehicle. Sergeant Ruelle and Officer Wheeler approached Martinson as he was walking towards his residence and called out to Martinson asking if he would hold up for a second and if Martinson was willing to talk to them. Martinson responded with "what's going on ... what's up?" Sergeant Ruelle informed Martinson he was responding to a report of a possible intoxicated driver matching the license plate of the car in Martinson's driveway. Nothing in the record indicates that either Sergeant Ruelle or Officer Wheeler engaged their flashers, displayed a weapon, or made any threats or demands to Martinson. Sergeant Ruelle and Martinson conversed, and Martinson voluntarily agreed to continue the conversation in Sergeant Ruelle's squad car. Accordingly, because the officers' conduct did not constitute a show of authority implicating the Fourth Amendment, Martinson was not unlawfully seized when he was initially approached by the officers in his driveway.

### III

[¶ 13] Martinson argues Sergeant Ruelle lacked reasonable grounds to arrest him for actual physical control because the offense was alleged to have occurred on a private driveway, and private driveways are not within the scope of the statute. We recently decided this very issue in *State v. Mayland*, 2017 ND 244, 902 N.W.2d 762. Section 39–08–01, N.D.C.C., provides "[a] person may not drive or be in actual physical control of any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state" if that person has an alcohol concentration of eight one-hundredths by weight.

[¶ 14] In *Mayland*, we held a private driveway was within the scope of N.D.C.C. § 39–08–01. *Mayland*, 2017 ND 244, ¶ 12, 902 N.W.2d 762. This court previously interpreted "private areas to which the public has a right of access" to include private parking lots, farmyards, unimproved private residential lots, and ditches. *Id.* at ¶ 13. Under *Mayland*, we now interpret the statute to apply to driveways as well. *Id.* at ¶ 12.

[¶ 15] Nevertheless, "[t]o say that private driveways are within the scope of N.D.C.C. § 39–08–01 is not to say that every private driveway is or may be presumed to be subject to a right of public access for vehicular use." *Mayland*, 2017 ND 244, ¶ 13, 902 N.W.2d 762. Whether a driveway is a private area to which the public has a right to access is a question of fact. *Id.* at ¶ 14. "The factual question may be determined by such factors as the existence or absence of signs, gates, or barriers, whether or not there is routine use by the public not specifically invited to use the property, or the location of the vehicle on the property." *Id.*

[¶ 16] In this case, Martinson was on a driveway the administrative agency could reasonably conclude was commonly used by the public for deliveries, solicitations, and similar activities. There is no evidence the driveway had "no trespassing" or "keep out" signs, a gate, or other barrier. A fact-finder could reasonably conclude the driveway, although private, was an area "to which the public has a right of access for vehicular use." Accordingly, the officers had reasonable grounds to arrest Martinson for actual physical control while in his own driveway.

## IV

[¶ 17] We affirm the district court judgment affirming the administrative agency's decision.

[¶ 18] Gerald W. VandeWalle, C.J.

Jon J. Jensen

Jerod E. Tufte

Daniel J. Crothers

Lisa Fair McEvers