2017 ND 75

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Jacob Colby WEBSTER, Defendant and Appellant**

**No. 20160155**

Supreme Court of North Dakota.

Filed 03/30/2017

Stephenie L. Davis, Assistant State's Attorney, 201 Fifth Street N.W., Suite 550, Watford City, N.D. 58854, for plaintiff and appellee.

Benjamin C. Pulkrabek, 402 First Street N.W., Mandan, N.D. 58554–3118, for defendant and appellant.

Kapsner, Justice.

[¶ 1] Jacob Webster appeals from a criminal judgment entered after a jury returned a general verdict finding him guilty of driving under the influence. Because a driver may not be criminally convicted for refusing a warrantless blood test incident to arrest under <u>Birchfield v. North Dakota</u>, —— U.S. ——, 136 S.Ct. 2160, 195 L.Ed.2d 560 (2016), we conclude

the general verdict finding Webster guilty of driving under the influence under an instruction alternatively criminalizing the refusal to submit to a warrantless blood test incident to arrest was not harmless error beyond a reasonable doubt. We further conclude Webster was not entitled to a jury instruction on the legal requirements for a law enforcement officer to request a preliminary onsite breath screening test. We reverse and remand.

I

[¶ 2] According to a law enforcement officer, he stopped a vehicle driven by Webster in July 2014, after observing Webster's vehicle following too close to another vehicle and passing in a restricted area. The officer testified he initially did not detect the odor of alcohol emanating from Webster, but he ultimately noticed an odor of alcohol from Webster. The officer testified Webster failed a horizontal gaze nystagmus test and "walk and turn" test, passed a "one-leg stand" test, and performed satisfactorily on an "alphabet" test, but unsatisfactorily on a "backwards count" test and a "finger count" test. The officer testified Webster refused to submit to a preliminary onsite breath screening test after being read an implied consent advisory requiring that test. According to the officer, he then arrested Webster for driving under the influence, read him Miranda rights and the implied consent advisory for chemical tests after arrest, and he refused to submit to a requested warrantless blood test incident to arrest.

[¶ 3] The State charged Webster with a class B misdemeanor for driving under the influence under N.D.C.C. § 39–08–01, alleging he either drove while under the influence or refused a chemical test. Webster made a pre-trial motion to dismiss, arguing the criminal charge for refusing a chemical test violated his state and federal constitutional rights. The district court denied Webster's motion.

[¶ 4] An initial jury trial resulted in deadlocked jury. At a second jury trial in April 2016, the district court refused Webster's oral request to instruct the jury on the information an officer must possess before requesting a preliminary onsite breath screening test. The court "noted" Webster's objection, but said the instruction involved matters for a pre-trial motion and not for the jury. Without objection by either party, the court instructed the jury it could find Webster guilty of driving under the influence if it found he drove a vehicle on a highway and was either under the influence of intoxicating liquor, or refused to submit to an onsite screening test, or refused to submit to a blood test after being arrested. During deliberations, the jury asked the court, "[i]s it legal for law enforcement to ask someone to submit to a breathalyzer under any circumstances?" The court instructed the jury to rely on the instructions provided, and the jury thereafter returned a general verdict finding Webster guilty of driving under the influence.

II

[¶ 5] Webster argues Birchfield, 136 S.Ct. 2160, precludes a criminal prosecution for refusing to submit to a warrantless blood test incident to a lawful arrest and the district court should not have instructed the jury it could find him guilty of driving under the influence if the jury found he refused to submit to the warrantless blood test. Webster admits there was no objection to those jury instructions, but argues the instructions are obvious error affecting a substantial right. The State responds the instructions are subject to a harmless error analysis and the instruction was harmless error beyond a reasonable doubt because the record is clear Webster

refused to submit to an onsite breath screening test and the jury could have found him guilty of refusing that test.

[¶ 6] Under the general verdict form and instructions, the jury could find Webster guilty of driving under the influence if the jury found he drove a vehicle on a highway and was either (1) under the influence of intoxicating liquor, or (2) refused to submit to an onsite screening test, or (3) refused to submit to a chemical test of his blood after being arrested. One of the ways for finding Webster guilty of driving under the influence—refusal of a warrantless blood test incident to arrest—is no longer a cognizable offense after Birchfield and a conviction based on that theory of driving under the influence cannot stand. See Birchfield, 136 S.Ct. at 2186 (holding warrantless blood test incident to arrest violates Fourth Amendment and reversing conviction for refusing warrantless blood test incident to arrest).[1]

[¶ 7] In Dominguez v. State, 2013 ND 249, ¶ 22, 840 N.W.2d 596, in the context of a post-conviction proceeding for relief from an attempted murder conviction, this Court considered an analogous issue and said one of two alternative charges for attempted murder was not a cognizable offense. This Court said a general verdict form authorizing a guilty verdict without differentiating between the valid charge for attempted murder and the charge that was not a cognizable offense raised constitutional implications and was reviewable under a harmless error analysis to determine whether the error was harmless beyond a reasonable doubt. Id. at ¶¶ 23–27.

[¶ 8] To establish obvious error, a defendant must show: (1) error; (2) that is plain; and (3) affects substantial rights. State v. Kruckenberg, 2008 ND 212, ¶ 15, 758 N.W.2d 427; State v. Wegley, 2008 ND 4, ¶ 14, 744 N.W.2d 284. If the error affects a defendant's constitutional rights, the prosecution must prove beyond a reasonable doubt the error was harmless and did not contribute to the verdict. Kruckenberg, at ¶ 15; State v. Faul, 300 N.W.2d 827, 833 (N.D. 1980). When determining whether the error was harmless beyond a reasonable doubt, we consider the probable effect of the error in light of all the evidence. Kruckenberg, at ¶ 15; State v. Smuda, 419 N.W.2d 166, 168 (N.D. 1988).

[¶ 9] Here, the general jury verdict and instructions authorized the jury to find Webster guilty of driving under the influence if the jury found he drove on a highway and was either under the influence of intoxicating liquor, or refused to submit to the onsite screening test, or refused to submit to a blood test after arrest. In light of Birchfield, 136 S.Ct. at 2186, which was decided while this case was on direct appeal, a conviction for refusing a warrantless blood test incident to arrest is not a cognizable offense and implicates Webster's constitutional rights. The jury thus was left with two legally cognizable ways to find Webster guilty of driving under the influence—refusing the onsite screening test or driving while under the influence of intoxicating liquor. The evidence in this record is meager regarding the level of Webster's intoxication, and we cannot say with any degree of certainty the jury found Webster guilty under the alternative requiring him to be under the influence of intoxicating liquor. Although Webster does not dispute he refused to submit to the onsite screening test, the record reflects a deadlocked jury in the first criminal trial

---

1. The State has not argued the request for a warrantless blood test was based on any other exceptions to the warrant requirement. See Birchfield, 136 S.Ct. at 2186 (stating no evidence to suggest exigent circumstances exception would justify warrantless blood test and no other basis to justify warrantless blood test).

and the jury in the second trial submitted a question to the court asking whether it was "legal for law enforcement to ask someone to submit to a breathalyzer under any circumstances?" The jury's question clearly manifests some uncertainty about the circumstances for requesting a breath test, which raises serious questions about whether the jury found Webster guilty of refusing the onsite breath test, or the blood test after arrest. On this record, we conclude the erroneous instruction about the blood test refusal was not harmless beyond a reasonable doubt. Under that standard and the facts and circumstances of this case, we are simply unable to conclude the instructions were harmless beyond a reasonable doubt. We therefore reverse the judgment and remand for a new trial.

## III

■ [¶ 10] Although the issue about the general verdict and the instructions is dispositive of this appeal, Webster also raises another issue that is likely to arise on remand and we will address that issue. See State v. Samshal, 2013 ND 188, ¶ 12, 838 N.W.2d 463; State v. Lamb, 541 N.W.2d 457, 462 (N.D. 1996).

[¶ 11] Webster argues the district court should have instructed the jury on the requisite information a law enforcement officer must possess before the officer may request a motorist to submit to a preliminary onsite breath screening test. The State responds the court correctly refused to give an instruction describing when an officer may request an onsite breath screening test because the resolution of that issue is not a jury question.

[¶ 12] Rule 30, N.D.R.Crim.P., requires a party to submit written requests for jury instructions in criminal cases. See State v. Miller, 466 N.W.2d 128, 133 (N.D. 1991); State v. Marks, 452 N.W.2d 298, 303–04

(N.D. 1990). Here, Webster did not provide the district court with a written instruction; rather, he orally raised the issue about the jury instruction during the court's colloquy with the parties about final jury instructions:

[DEFENSE COUNSEL]: Based on the testimony of the officer and what has become before us, under the refusal portion I feel that it's important to include that upon a finding of reasonable suspicion that the officer formulates an opinion that the driver's body contained alcohol and he refused to test. . . .

[STATE'S ATTORNEY]: Judge, I believe that would be an incorrect statement of the law. It may be a factor in an administrative proceeding. And the only reason the State addressed it is because the defense raised it on cross-examination. It was not raised on direct. But, to include something like that would not be a correct statement of the law.

[DEFENSE COUNSEL]: I have a case, The State v. Boehm, B-o-e-h-m, 2014 ND 154, 849 N.W.2d 239. And the statement of the law as pursuant to NDCC 39–20–14(1), a law enforcement officer may request an onsite screening test of an individual's breath . . . if there is reason to believe, (1) a traffic violation has occurred—which we are not arguing. And (2) in conjunction with the violation, the officer based on observation formulates an opinion the driver's body contains alcohol.

THE COURT: I am not giving that instruction for a couple of reasons. I think that that's not a question for a jury. I think that's a question for a pretrial motion judge issue, if it were to be raised. Which it wasn't. And I don't think there's adequate evidence to support the instruction that I have here. And I think what I have here is the law.

So, I am not giving that instruction. But, your objection has been noted.

[¶ 13] Although the record does not establish Webster provided the district court with his proposed instruction in writing, he orally provided the court with his request. In denying Webster's request, the court "noted" his objection and said the issue was a question for a pre-trial motion and not for a jury. Because we reverse and remand for a new trial on another issue and this issue will likely arise on remand, we will consider this issue without specifically deciding whether Webster properly preserved it for review in this appeal.

[¶ 14] Section 39–20–14(1), N.D.C.C., describes an individual's implied consent to a preliminary onsite screening test of the individual's breath for the purpose of estimating the alcohol concentration in the individual's breath if a law enforcement officer has reason to believe the individual committed a moving traffic violation or was in an accident and in conjunction with the violation or accident, the officer, through observations, formulates an opinion the individual's body contains alcohol. See State v. Boehm, 2014 ND 154, ¶ 10, 849 N.W.2d 239 (describing statutory standard for requesting preliminary breath test and stating traffic stop for speeding and individual's admission of alcohol consumption meets statutory requirements).

[¶ 15] The charges against Webster involved an incident in 2014, and under the operative statute, a person who operated a motor vehicle on a highway of this state who refused to submit to an onsite screening test upon the request of an officer under N.D.C.C. § 39–20–14 was guilty of an offense under N.D.C.C. §§ 39–08–01(1)(e)(3) and 39–08–01(2)(a).[2] The issue

here is whether the requirements for an officer to request an onsite screening test of an individual's breath under N.D.C.C. § 39–20–14(1) are an essential element of the criminal charge under N.D.C.C. § 39–08–01 for operating a motor vehicle on a highway of this state and refusing an onsite screening test.

[¶ 16] Section 12.1–01–3(1), N.D.C.C., describes the elements of an offense and provides:

No person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt.... "Element of an offense" means:

a. The forbidden conduct;

b. The attendant circumstances specified in the definition and grading of the offense;

c. The required culpability;

d. Any required result; and

e. The nonexistence of a defense as to which there is evidence in the case sufficient to give rise to a reasonable doubt on the issue.

[¶ 17] In State v. Guttormson, 2015 ND 235, 869 N.W.2d 737, in the context of considering whether the evidence was sufficient to support a conviction for refusing an onsite breath screening test, this Court said:

At trial, the jury was given instructions regarding the burden of proof under the statutes. The court detailed that the prosecution must prove, beyond a reasonable doubt, six essential elements for refusal to submit to testing based on N.D.C.C. §§ 39–08–01(1)(e)(3) and 39–20–14. Guttormson argues the State

2. The 2015 legislature amended N.D.C.C. § 39–08–01 to include language stating that an individual is not subject to an offense for refusing an onsite screening test if the person

submits to a chemical test under N.D.C.C. § 39–20–01 for the same incident. 2015 N.D. Sess. Laws ch. 268, § 6.

did not provide sufficient evidence that Officer Gonzalez had reason to believe Guttormson committed a moving traffic violation, and in conjunction with the violation, formulated an opinion that Guttormson's body contained alcohol. He focuses on the language in N.D.C.C. § 39–20–14(1), which was covered by essential element number two in the jury instruction, and alleges it was not proven beyond a reasonable doubt.

A review of the record in the light most favorable to the verdict, however, supports the conviction. Sufficient circumstantial evidence was offered so that the jury could reasonably infer the requirements of the statute were met. To convict Guttormson, the statute requires "a law enforcement officer who has reason to believe that the individual committed a moving traffic violation . . . and in conjunction with the violation . . . formulated an opinion that the individual's body contain[ed] alcohol." N.D.C.C. § 39–20–14(1). The State was not required to prove the traffic violation itself beyond a reasonable doubt, nor was it required to prove that Guttormson's body contained alcohol beyond a reasonable doubt. The statute simply requires proof the officer "has reason to believe" a traffic violation occurred, and "formulated an opinion" the person's body contains alcohol. At trial, Birney's testimony suggested the silent squad car video showed Guttormson, just before the stop, briefly driving on the center line in the road. After doing so, he was pulled over. From this evidence and the jury's own personal observation of the video, the jury could have reasonably inferred that Gonzalez had reason to believe Guttormson committed a moving traffic violation. See N.D.C.C. § 39–10–17(1) (providing that "[a] vehicle must be driven as nearly as practicable entirely within a single lane . . .").

Officer Birney also testified that upon his arrival Guttormson exhibited several visual signs of potential alcohol consumption—poor balance, swaying, difficulty standing, and the appearance of being intoxicated. These actions were also illustrated at trial in the silent squad car video. Through these circumstances, which the State argued through observation of the video—Guttormson's traffic violation, his parking in the left turn lane, his poor balance and swaying, and his staggering back and leaning against his pickup, as well as Officer Birney's testimony regarding his personal observations—the jury could have reasonably inferred that Gonzalez, through his observations, formulated an opinion that Guttormson's body contained alcohol. Based on these inferences, the conviction for refusal to submit to an onsite screening test was established beyond a reasonable doubt.

After reviewing the evidence and testimony and all inferences reasonably drawn therefrom in a light most favorable to the verdict, we conclude a rational factfinder could have found Guttormson guilty beyond a reasonable doubt. See [State v.] Morales, 2004 ND 10, ¶ 27, 673 N.W.2d 250. We conclude sufficient evidence exists to sustain Guttormson's conviction.

Guttormson, at ¶¶ 18–21.

[¶ 18] In Guttormson, however, this Court was not asked to decide the essential elements of the charge of refusing to submit to an onsite screening test; rather, the statements about the elements of refusing an onsite screening test were part of jury instructions given in that case and became the law of that case for purposes of assessing a claim about the sufficiency of the evidence. See Guttormson, 2015 ND 235, ¶¶ 28–29, 869 N.W.2d 737 (McEvers, Justice, concurring specially).

[¶ 19] Section 39–08–01(1)(e)(3), N.D.C.C., says a person may not drive upon a highway of this state and refuse to submit to an onsite screening test of the individual's breath "upon the request of a law enforcement officer under section 39–20–14." An individual who operates a motor vehicle on a highway in this state and refuses to submit to a test required under N.D.C.C. § 39–20–14 is guilty of an offense. N.D.C.C. § 39–08–01(2)(a). Section 39–20–14(1), N.D.C.C., authorizes a law enforcement officer to request an onsite screening test if the officer "has reason to believe that the individual committed a moving traffic violation or was involved in a traffic accident as a driver, and in conjunction with the violation or the accident the officer has, through the officer's observations, formulated an opinion that the individual's body contains alcohol." We have construed that language to require reasonable suspicion of driving under the influence before an officer may require a driver to submit to an onsite breath screening test. State v. Baxter, 2015 ND 107, ¶ 10, 863 N.W.2d 208.

[¶ 20] Whether a law enforcement officer's conduct violates constitutional prohibitions against unreasonable searches and seizures is a question of law. State v. Kaul, 2017 ND 56, ¶ 5; State v. Uran, 2008 ND 223, ¶ 5, 758 N.W.2d 727; State v. LaFromboise, 542 N.W.2d 110, 112 (N.D. 1996). We have recognized that whether the facts meet the legal standard of probable cause to arrest, or a reasonable and articulable suspicion for an investigatory stop is a question of law fully reviewable on appeal. Aamodt v. N.D. Dep't of Transp., 2004 ND 134, ¶ 12, 682 N.W.2d 308; Dettler v. Sprynczynatyk, 2004 ND 54, ¶ 10, 676 N.W.2d 799; Hanson v. Director, N.D. Dep't of Transp., 2003 ND 175, ¶ 7, 671 N.W.2d 780. This Court has also recognized that probable cause to arrest is different from reasonable suspicion to stop:

> An officer has "reasonable suspicion" to stop a motor vehicle if the officer can point to "some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." Probable cause to arrest, however, requires more: it exists when "the facts and circumstances within a police officer's knowledge and of which he had reasonable trustworthy information are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed." When determining whether probable cause exists to arrest, however, the officer need not possess knowledge or facts sufficient to establish guilt.

Moran v. N.D. Dep't of Transp., 543 N.W.2d 767, 770 (N.D. 1996) (citations omitted).

[¶ 21] The degree of information an officer must possess to request an onsite breath screening test is less stringent than probable cause to arrest and more specific than reasonable suspicion for an investigatory stop but is akin to those legal determinations. See Boehm, 2014 ND 154, ¶¶ 10–11, 849 N.W.2d 239 (discussing probable cause to arrest and information necessary to request onsite breath screening test); City of Devils Lake v. Grove, 2008 ND 155, ¶¶ 11–14, 755 N.W.2d 485 (discussing probable cause to arrest and reasonable and articulable suspicion for investigatory stop); Aamodt, 2004 ND 134, ¶ 12, 682 N.W.2d 308 (stating legal standard rising to level of probable cause or reasonable and articulable suspicion is question of law fully reviewable on appeal); Moran, 543 N.W.2d at 769–70 (discussing legal conclusions of probable cause to arrest for driving under the influence and reasonable suspicion to stop driver).

[¶ 22] In State v. Neset, 462 N.W.2d 175, 176–78 (N.D. 1990), we held a motion to "dismiss and suppress" on the ground an arresting officer did not have an articulable reason to initially stop a defendant's vehicle must be raised before trial and the failure to make a required pretrial motion was a waiver under N.D.R.Crim.P. 12. A different result is not warranted for the similar issue involving the more specific requirements for requesting an onsite breath screening test and the evidence of the refusal of that test. We recognize the requirements for requesting an onsite screening test are relevant to the administrative suspension of a license for refusing an onsite breath screening test under N.D.C.C. § 39–20–05(3), but the forbidden conduct in the statute criminalizing refusal of an onsite breath screening test, N.D.C.C. § 39–08–01(1)(e)(3), specifically requires driving on a highway and refusing to submit to the onsite test upon the request of a law enforcement officer under N.D.C.C. § 39–20–14. We are not persuaded the reference to N.D.C.C. § 39–20–14 in N.D.C.C. § 39–08–01(1)(e)(3) incorporates the requirements for requesting an onsite screening test as an element of the offense of refusing an onsite screening test. We note the statute criminalizing refusal of a chemical test in N.D.C.C. § 39–08–01(1)(e)(2) also incorporates the requirements of N.D.C.C. § 39–20–01, which requires an officer to arrest a driver upon probable cause before requesting a chemical test. Probable cause for an arrest is a legal question subject to a pretrial motion, and we decline to construe the requirements for requesting an onsite breath screening test in a different manner.

[¶ 23] We conclude the requirements for an officer to request an onsite breath screening test constitute a legal issue for determination before trial and are not essential elements of the crime of refusing an onsite breath screening test under N.D.C.C. § 39–08–01(1)(e)(3). We therefore conclude the district court did not err in refusing to instruct the jury on the legal requirements for a law enforcement officer to request an onsite breath screening test.

## IV

[¶ 24] We reverse the judgment and remand for further proceedings consistent with this opinion.

[¶ 25] Carol Ronning Kapsner

Lisa Fair McEvers

Daniel J. Crothers

Gerald W. VandeWalle, C.J.

I concur in the result.

Dale V. Sandstrom, S.J.

[¶ 26] The Honorable Jerod E. Tufte was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge Dale V. Sandstrom, sitting.