VandeWalle, Chief Justice.
 

 [¶ 1] Joshua Taylor appealed from a criminal judgment entered after a jury found him guilty of refusing to submit to a chemical test for intoxication. Taylor argues the district court erred in denying his requested jury instruction and his motion to dismiss. We affirm.
 

 I
 

 [¶ 2] According to the arresting officer, in the early morning hours of February 16, 2017, he observed Taylor driving a vehicle that failed to stop at a stop sign. The officer testified he initiated a traffic stop that resulted in Taylor's refusal to submit to an onsite preliminary breath test and in a subsequent arrest and refusal to submit to an Intoxilyzer test at a law enforcement center. The State charged Taylor with refusal to submit to a chemical test under "NDCC/Ord. 39-08-01(E)."
 

 [¶ 3] Throughout these proceedings, Taylor has represented himself and has maintained that a video from the arresting officer's patrol vehicle would establish he stopped at the stop sign. This record does not include a written request for discovery by Taylor, but in his appellate brief he claims he requested the audio and video recordings from the state's attorney's office and was ultimately told the materials
 were unrecoverable. In response to a district court inquiry about the status of discovery at a pretrial dispositional conference, Taylor indicated "[i]t sounds like what I was waiting on is unrecoverable," and he moved to dismiss the charge for "lack of evidence." He argued the arresting officer did not have a valid reason for the initial traffic stop and, as a result, the officer's subsequent requests for an onsite screening test and a chemical test were invalid.
 

 [¶ 4] The State responded that Taylor's argument referred to the fact that a video camera in the officer's patrol vehicle "wasn't operational" at the time of the stop, but the officer's testimony at trial would be sufficient evidence of driving under the influence and the basis for the stop. The State argued that "just because the video camera wasn't operational doesn't mean that the officer's word and his testimony isn't evidence." The district court denied Taylor's motion to dismiss.
 

 [¶ 5] Taylor thereafter requested a jury instruction under N.D.C.C. § 39-20-14(1), which authorizes a law enforcement officer to request an onsite screening test if the officer "has reason to believe that the individual committed a moving traffic violation ... and in conjunction with the violation ... the officer has, through the officer's observations, formulated an opinion that the individual's body contains alcohol." Immediately before the jury trial, the district court denied Taylor's requested jury instruction after an extensive colloquy:
 

 MR. TAYLOR: Part of my purpose for 39-20-14 is specifically the requirement by the state for a moving violation for request of a breathalyzer or chemical test.
 

 COURT: Ms. Kummer.
 

 MS. KUMMER [Assistant State's Attorney]: ... Mr. Taylor is charged with 39-08-01(e)(2) and that's part of North Dakota law provides that if he's found to have refused a chemical test after driving or being in actual physical control of a vehicle on a road or highway or a public right of access he must submit to a chemical test.
 

 As the Court indicated, 39-20-14 is regarding the PBT [Preliminary Breath Test]. While he did refuse that as well, I think the State is intending to move forward with the prosecution of the crime of refusing it once he was actually arrested and transported back to the jail which would require only a showing that he operated a motor vehicle in Richland County. He failed to stop at a stop sign so I also don't know what the argument is going to be about whether there was a moving violation or not. Obviously, there was a violation of state law there as well. But I think that the proper jury instruction is what the State has actually charged him with and that is operating a motor vehicle on a public way and refusing to submit to a chemical test. I think that the Court's essential elements are correct.
 

 MR. TAYLOR: To my understanding, your Honor, 39-20-14 doesn't cover a charge itself-it covers screening test. The point of 39-20-14(1) is that they have to have a moving violation to request the breathalyzer. I couldn't have ended up in Richland County Sheriff's Department for the chemical test during booking without an arrest. The arrest is for refusal on site chemical test. 39-20-14 requires a moving violation.
 

 COURT: Well, your arrest, I assume, for suspected DUI. Was there actually an arrest Ms. Kummer?
 

 MS. KUMMER: Right. Yep, and it was based on all the officer's observations, and including refusing the PBT.
 

 MR. TAYLOR: That is the actual charge. Refusal to submit to an on site chemical test.
 

 COURT: Well there's two and they often get interchanged and confused. There's a preliminary breath test-the PBT.... And that's one to determine if further testing is warranted. That's the on-site screening test out in the field. And if you flunk that then usually what they do is they arrest you and then they bring you to ... and that one's not admissible in court. So what they do is bring you, because it's just a screening test, so then they bring you to the Law Enforcement Center or if you consent you can go to the hospital and get a blood draw or you come here and you get a UA or do the Intoxilyzer.
 

 MR. TAYLOR: But seeing as there wasn't a chemical test on site the arrest is for refusal on site. There is no other way around that if I don't refuse on site I don't get arrested for refusal. Under the law I'm considered to be under arrest as soon as an officer will not let me leave his presence. As soon as I am detained and not free to move.
 

 COURT: Yeah. I don't know when the arrest took place in this. This is ... I know nothing about this case other than what minimal things have been filed.
 

 MS. KUMMER: Well, I guess what does it matter.
 

 MR. TAYLOR: Because the key element of 39-20-14 is requiring a moving violation.
 

 COURT: But that's not what you are charged with violating.
 

 MS. KUMMER: Right.
 

 COURT: The citation is 39-08-01, refusing the chemical test once you got to the law enforcement center.
 

 MR. TAYLOR: But I was arrested before I was brought to the Law Enforcement Center.
 

 COURT: On suspected DUI.
 

 MR. TAYLOR: For refusal. That is what I was told by the officer on site. You are under arrest for refusal to submit.
 

 COURT: So based on what comes out here in court there is going to be final instructions, and I may modify the instructions based on that, but what I know at this time and I have no evidence all I have is the filings in this case, the citation clearly says 39-08-01, which is before you there and that talks about blood, breath, and urine. You're requesting a PBT instruction. All's I know about it is what you are telling me here. There is nothing in the file other than your requested jury instruction. So at this time I'm going to deny your request. The evidence that comes out at trial may change that. I may have to modify the instruction but I'm going with what the citation charged and what Ms. Kummer intends to try and prove up here today.
 

 MS. KUMMER: And I guess I still don't understand what it matters. I mean he's charged with ...
 

 COURT: ... well, as I understand it, Mr. Taylor's, obviously whether or not there was a moving violation is in question. Mr. Taylor's going to refute that and so if there was no moving violation he's going to argue that the stop was improper and the test should not have been administered or requested.
 

 MS. KUMMER: That seems like not a question for the jury. I mean, that
 seems like something that the Court should decide as a matter of law prior to.
 

 MR. TAYLOR: Lacking burden of proof. There is no proof I ran the stop sign. I refute that I ran the stop sign and have a witness that was in the vehicle.
 

 COURT: Well, that would have been more appropriate for a motion to suppress.
 

 MS. KUMMER: Right.
 

 COURT: So we wouldn't get that far, but we're here today, so again I'm going to deny it and going with the instruction as is. Anything else on the instructions?
 

 MS. KUMMER: Not that I saw.
 

 MR. TAYLOR: No your Honor.
 

 [¶ 6] The district court thereafter provided the jury with preliminary instructions, including an instruction on the essential elements of the charge of refusing a chemical test:
 

 On February 16, 2017, in Richland County, North Dakota, the Defendant, Joshua Ryan Taylor, drove a vehicle on a highway or upon public or private areas to which the public has a right of access for vehicular use; and the Defendant, Joshua Ryan Taylor, refused to submit to a chemical test, or tests, of his blood, breath, or urine to determine the alcohol concentration or presence of other drugs, or combination of alcohol and drugs, in his blood, breath, or urine, at the direction of a law enforcement officer.
 

 [¶ 7] At trial, the arresting officer testified about the initial traffic stop and Taylor's refusal to submit to an onsite preliminary breath test and to a subsequent Intoxilyzer test. After the State rested, Taylor moved to "suppress anything else about the stop sign." The district court stated a motion to suppress was inappropriate at that stage of the proceeding, but treated his request as a motion for acquittal under N.D.R.Crim.P. 29 and denied the motion. Taylor did not testify on his behalf but called a passenger in his vehicle and the arresting officer to testify about the events leading up to the initial traffic stop. The court thereafter denied Taylor's motion for "summary dismissal," stating the "case is about a refusal on your part and there is nothing in the record to ... contradict ... [the arresting officer's] testimony that he read you the Implied Consent and that you refused." Taylor broached the issue about his earlier requested jury instruction under N.D.C.C. § 39-20-14, and the court again denied his request:
 

 COURT: ... I'm going to stick with the instruction as is because, yes that was the testimony that he arrested you after the PBT refusal but the citation states that it was under 39-08-01(1)(e) I believe it is. And the citation was not for 39-20-14, which is the PBT part. I understand [the arresting officer] but it's ultimately up to Ms. Kummer as the State's Attorney as to how she's going to proceed and what the charge is going to be. Often times that changes. So it's ... even though [the arresting officer] may have arrested you [for refusing the onsite preliminary breath test], Ms. Kummer proceeded on the basis of it being 39-08-01. Again if you objected, that would have been better to be some type of motion prior to the trial here today to either amend the charge or to have your suppression motion-things of that nature. It's too late in the game to do that at this time.
 

 The jury thereafter found Taylor guilty of refusing to submit to a chemical test.
 

 II
 

 [¶ 8] Taylor argues the district court erred in denying his requested jury instruction under N.D.C.C. § 39-20-14(1). According to Taylor, he stopped at the stop sign and he claims a video from the officer's vehicle would show he stopped, which would establish the officer lacked any justification for the initial traffic stop and for any tests for intoxication.
 

 [¶ 9] In
 
 State v. Webster
 
 ,
 
 2017 ND 75
 
 , ¶¶ 10-24,
 
 891 N.W.2d 769
 
 , we addressed an issue about a defendant's request for a jury instruction under N.D.C.C. § 39-20-14(1) to a charge of refusing to submit to an onsite screening test under N.D.C.C. § 39-08-01(1)(e)(3).
 
 [1]
 
 We said the issue was whether the essential elements of a criminal charge under N.D.C.C. § 39-08-01(1)(e)(3) included the requirements of N.D.C.C. § 39-20-14(1).
 
 Webster
 
 , at ¶ 15. We discussed the quantum of information an officer must have to request an onsite screening test in relation to the legal issue of whether the officer's conduct violates constitutional prohibitions against unreasonable searches and seizures.
 
 Id.
 
 at ¶¶ 19-21. We explained a defendant's claim that an officer did not have an articulable reason to initially stop the defendant's vehicle must be raised before trial and the failure to make a required pretrial motion was a waiver under N.D.R.Crim.P. 12.
 
 Webster
 
 , at ¶ 22. We said probable cause for an arrest was a legal question subject to a pretrial motion, and we declined to construe the requirements for requesting an onsite breath screening test differently.
 
 Id.
 
 at ¶ 22. We said the reference to N.D.C.C. § 39-20-14 in N.D.C.C. § 39-08-01(1)(e)(3) did not incorporate those requirements as an essential element of the offense of refusing an onsite screening test, and we described the appropriate method for raising an issue about the quantum of proof necessary for a traffic stop:
 

 We conclude the requirements for an officer to request an onsite breath screening test constitute a legal issue for determination before trial and are not essential elements of the crime of refusing an onsite breath screening test under N.D.C.C. § 39-08-01(1)(e)(3). We therefore conclude the district court did not err in refusing to instruct the jury on the legal requirements for a law enforcement officer to request an onsite breath screening test.
 

 Webster
 
 , at ¶ 23.
 

 [¶ 10] Here, the State charged Taylor with refusing to submit to a chemical test under N.D.C.C. § 39-08-01(1)(e)(2), which does not refer to or incorporate the requirements of N.D.C.C. § 39-20-14. Although Taylor "disagrees" with
 
 Webster
 
 , our decision in that case controls the issue about the procedure for challenging an officer's initial traffic stop and the propriety of a jury instruction on the issue in the context of a charge for refusing to submit to a chemical test under N.D.C.C. § 39-08-01(1)(e)(2).
 

 [¶ 11] Taylor's argument nevertheless involves his claim that he was arrested for
 refusing the onsite screening test. In
 
 State v. Smith
 
 ,
 
 452 N.W.2d 86
 
 , 87 (N.D. 1990), we considered an analogous claim in the context of a conviction for possession of firearms by a convicted felon after a law enforcement officer initially stopped a vehicle for violation of an open-bottle law. We explained:
 

 The law governing investigative stops of automobiles is clear: an officer must have an articulable and reasonable suspicion that a motorist is violating the law in order to legally stop a vehicle. Under the articulable and reasonable suspicion standard, the articulable aspect requires that the stop be justified with more than just a vague hunch or other non-objective facts; and the reasonable aspect means that the articulable facts must produce, by reasonable inference, a
 
 reasonable
 
 suspicion of unlawful conduct. The standard is an objective one, and we take into account inferences and deductions that an investigating officer would make that may elude a layperson. The question is whether a reasonable person in the officer's position would be justified by some objective manifestation to suspect the defendant was, or was about to be, engaged in unlawful activity.
 

 ....
 

 [A]n evaluation of whether there was reasonable suspicion to justify the stop does not depend on whether the grounds for the stop will ultimately result in conviction. Even with regard to probable cause to arrest, a much more exacting standard, the United States Supreme Court has said:
 

 The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest. We have made clear that the kinds and degree of proof and the procedural requirements necessary for a conviction are not prerequisites to a valid arrest.
 

 Thus, the State's dismissal of the open-bottle charge is irrelevant to the determination of the validity of the stop.... Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, ... and not on the officer's actual state of mind at the time the challenged action was taken.
 

 Smith
 
 , at 87-88 (citations and quotations omitted).
 

 [¶ 12] Under
 
 Smith
 
 , the failure to charge Taylor with refusing to submit to an onsite screening test is irrelevant to the validity of the stop, which instead turns on whether the officer had an articulable and reasonable suspicion Taylor was violating the law. The failure to stop at a stop sign is a violation of the law. N.D.C.C. §§ 39-10-01.1 and 39-10-24 ;
 
 City of Wahpeton v. Roles
 
 ,
 
 524 N.W.2d 598
 
 , 600-01 (N.D. 1994).
 

 [¶ 13] As we explained in
 
 Webster,
 

 2017 ND 75
 
 , ¶¶ 22-23,
 
 891 N.W.2d 769
 
 , the requirements for an officer's request for an onsite screening test are not an essential element of the crime of refusing that test, and a defendant's failure to raise an issue that an officer did not have an articulable reason to initially stop a defendant's vehicle in an appropriate pretrial motion constitutes a waiver of that issue under N.D.R.Crim.P. 12.
 
 See also
 

 State v. Skarsgard
 
 ,
 
 2008 ND 31
 
 , ¶¶ 8-10,
 
 745 N.W.2d 358
 
 ;
 
 State v. Schroeder
 
 ,
 
 524 N.W.2d 837
 
 , 839 (N.D. 1994) ;
 
 State v. Valgren
 
 ,
 
 411 N.W.2d 390
 
 , 392-94 (N.D. 1987). We have
 also consistently said that a person acting as his own attorney is bound by applicable procedural rules and a defendant's self-represented status does not relieve him of the requirement of complying with procedural rules.
 
 E.g.
 
 ,
 
 State v. DuPaul
 
 ,
 
 527 N.W.2d 238
 
 , 243-44 (N.D. 1995). To the extent Taylor failed to raise the requirements for the initial traffic stop in an appropriate pretrial motion, he waived that issue, and the district court did not err in refusing to give his requested jury instruction under
 
 Webster
 
 .
 

 III
 

 [¶ 14] Taylor argues the district court erred in denying his motion to dismiss the prosecution against him. His argument on appeal is intertwined with his claim that the State failed to comply with his discovery request under
 
 Brady v. Maryland
 
 ,
 
 373 U.S. 83
 
 ,
 
 83 S.Ct. 1194
 
 ,
 
 10 L.Ed.2d 215
 
 (1963), for an alleged favorable audio or video recording from the arresting officer's patrol vehicle to support his claim that he stopped at the stop sign.
 

 [¶ 15] In
 
 State v. Muhle
 
 ,
 
 2007 ND 132
 
 , ¶ 25,
 
 737 N.W.2d 647
 
 (citations omitted), we outlined the requirements to establish a
 
 Brady
 
 violation:
 

 In
 
 Brady
 
 , the United States Supreme Court held that suppression by the prosecution of evidence favorable to an accused violates due process if the evidence is material to guilt or punishment. To establish a
 
 Brady
 
 violation, the defendant must prove: (1) the government possessed evidence favorable to the defendant; (2) the defendant did not possess the evidence and could not have obtained it with reasonable diligence; (3) the prosecution suppressed the evidence; and (4) a reasonable probability exists that the outcome of the proceedings would have been different if the evidence had been disclosed.
 

 [¶ 16] Taylor did not explicitly raise a
 
 Brady
 
 claim in the district court. If a party fails to preserve an issue in the district court, our review is limited to whether there was obvious error affecting substantial rights.
 
 State v. Horn
 
 ,
 
 2014 ND 230
 
 , ¶ 7,
 
 857 N.W.2d 77
 
 ;
 
 State v. Olander
 
 ,
 
 1998 ND 50
 
 , ¶ 11,
 
 575 N.W.2d 658
 
 . In order to establish obvious error, a defendant must show: (1) error; (2) that is plain; and (3) that affects substantial rights.
 
 Horn
 
 , at ¶ 12 ;
 
 Olander
 
 , at ¶ 14. A claimed error must be a clear deviation from an applicable legal rule under current law.
 
 Horn
 
 , at ¶ 12 ;
 
 Olander
 
 , at ¶ 14.
 

 [¶ 17] This record does not establish there was an audio or video recording from the arresting officer's patrol vehicle. At a pretrial hearing, Taylor said he believed discovery had been completed and "[i]t sounds like what I was waiting on is unrecoverable." Taylor then moved to dismiss the charges against him for lack of evidence, and the State indicated the requested "video wasn't operational." This record does not establish whether there was an audio or video recording from the officer's vehicle, or whether any recording mechanism in the vehicle was operational on the morning of the arrest. We conclude this record does not substantiate any deviation from the requirements of
 
 Brady
 
 .
 

 [¶ 18] Taylor nevertheless raised this argument in the context of his motion to dismiss the prosecution against him for lack of evidence, and his argument implicates the sufficiency of the evidence to support his conviction.
 

 [¶ 19] In reviewing challenges to the sufficiency of the evidence, we view the
 evidence and reasonable inferences in the light most favorable to the verdict.
 
 State v. Charette
 
 ,
 
 2004 ND 187
 
 , ¶ 7,
 
 687 N.W.2d 484
 
 . "A conviction rests upon insufficient evidence only when no rational fact finder could have found the defendant guilty beyond a reasonable doubt after viewing the evidence in a light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor."
 

 Id.
 

 In reviewing challenges to the sufficiency of the evidence, we do not reweigh conflicting evidence, nor judge the credibility of witnesses.
 
 Id.
 
 at ¶ 7.
 

 [¶ 20] Viewing the evidence in the light most favorable to the State, there is sufficient evidence establishing that Taylor drove his vehicle on a road in Richland County and that he refused to submit to the Intoxilyzer test.
 
 See
 

 Webster
 
 ,
 
 2017 ND 75
 
 , ¶ 23,
 
 891 N.W.2d 769
 
 (describing essential elements of refusing to submit to an onsite breath screening test). We conclude the district court did not err in denying Taylor's motion to dismiss.
 

 IV
 

 [¶ 21] We affirm the judgment.
 

 [¶ 22] Gerald W. VandeWalle, C.J.
 

 Jon J. Jensen
 

 Lisa Fair McEvers
 

 Daniel J. Crothers
 

 Jerod E. Tufte
 

 At the time of
 
 Webster
 
 and the events in this case, an individual was guilty of an offense under N.D.C.C. § 39-08-01(1)(e)(3) for refusing to submit to an onsite screening test upon the request of a law enforcement officer under N.D.C.C. § 39-20-14, but was not subject to an offense for refusing an onsite screening test if the individual subsequently submitted to a chemical test for the same incident.
 
 See
 
 2015 N.D. Sess. Laws ch. 268, § 6. The Legislature amended N.D.C.C. §§ 39-08-01 and 39-20-14 in 2017 to delete language making refusal of an onsite screening test a crime.
 
 See
 
 2017 N.D. Sess. Laws ch. 268, §§ 1, 8.