# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 183

State of North Dakota,                                               Plaintiff and Appellee

v.

Dustin Tory Hendrickson,                                         Defendant and Appellant

No. 20190075

Appeal from the District Court of Ward County, North Central Judicial District, the Honorable Todd L. Cresap, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Christopher W. Nelson, Assistant State's Attorney, Minot, ND, plaintiff and appellee.

Dustin T. Hendrickson, Minot, ND, defendant and appellant.

**McEvers, Justice.**

[¶1]   Dustin Hendrickson appeals from a criminal judgment entered after he conditionally pled guilty to driving or in actual physical control of a vehicle while under the influence.   Hendrickson argues the district court erred by denying his motion to suppress because officers did not have reasonable suspicion to conduct an investigative stop.   We affirm.


                                                    I

[¶2]   Hendrickson was charged with actual physical control of a vehicle while under the influence of alcohol while being accompanied by a minor under N.D.C.C. § 39-08-01.4, a class A misdemeanor.   Hendrickson moved to suppress evidence and to dismiss the charges against him.   He argued officers did not have reasonable suspicion to stop him based on information from a 911 call.   Hendrickson claimed the 911 caller was a Taco Johns employee and the employee alleged he was in the restaurant's drive thru and appeared to be "beyond drunk."   He alleged the caller said he was slurring his speech; his eyes were "on and off," "open and shut," and "rolling to the back of his head;" and she said, "To us he looks drunk, but I wouldn't know."   He claimed the responding officers did not observe any suspicious behavior or note any signs of intoxication when they spoke to him.   Hendrickson argued the caller's information was not sufficient by itself to establish reasonable suspicion that he was intoxicated because the information was vague and did not contain any objective indicia which would lead a reasonable person to suspect intoxication.

[¶3]   Neither Hendrickson nor the State requested an evidentiary hearing.   The district court denied Hendrickson's motion based on the parties' briefs and the evidence submitted in support of the briefs, including a recording of the 911 call and

video of the stop. The court found there was sufficient reasonable and articulable suspicion based on the information from the 911 call to justify the investigative stop.

[¶4]    The State entered into a plea agreement with Hendrickson, and an amended complaint was entered, charging Hendrickson with actual physical control of a motor vehicle, a class B misdemeanor. Hendrickson conditionally pled guilty to the amended charge, reserving the right to appeal the court's order denying his motion to suppress. A criminal judgment was entered.

II

[¶5]    Because Hendrickson conditionally pled guilty reserving the right to appeal the district court's decision denying his motion to suppress, his appeal is limited to those issues he raised in the motion to suppress. *See* N.D.R.Crim.P. 11(a)(2) (stating a conditional guilty plea reserves the right to have an appellate court review an adverse determination of a specified pretrial motion); *State v. Trevino*, 2011 ND 232, ¶¶ 6-7, 807 N.W.2d 211 (stating issues not reserved by a conditional guilty plea are waived). Hendrickson argues the district court erred by denying his motion to suppress because the officers did not have reasonable suspicion to conduct an investigative stop.

[¶6]    The standard for reviewing a court's decision on a motion to suppress is well established:

> [W]e give deference to the district court's findings of fact and we resolve conflicts in testimony in favor of affirmance. We will not reverse a district court decision on a motion to suppress . . . if there is sufficient competent evidence capable of supporting the court's findings, and if the decision is not contrary to the manifest weight of the evidence. Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law.

*State v. Broom*, 2018 ND 135, ¶ 6, 911 N.W.2d 895 (quoting *State v. Kaul*, 2017 ND 56, ¶ 5, 891 N.W.2d 352). Whether there was reasonable suspicion to justify an investigative stop is a question of law, which is fully reviewable on appeal. *State v. Knox*, 2016 ND 15, ¶ 7, 873 N.W.2d 664.

2

[¶7]	The Fourth Amendment of the United States Constitution and Article I, section 8, of the North Dakota Constitution, protect individuals from unreasonable searches and seizures. "An officer must have a reasonable and articulable suspicion that a motorist has violated or is violating the law in order to legally stop a vehicle." *Lies v. N.D. Dep't of Transp.*, 2019 ND 83, ¶ 5, 924 N.W.2d 448. "Under the articulable and reasonable suspicion standard, the articulable aspect requires that the stop be justified with more than just a vague hunch or other non-objective facts; and the reasonable aspect means that the articulable facts must produce, by *reasonable* inference, a reasonable suspicion of unlawful conduct." *State v. Taylor*, 2018 ND 132, ¶ 11, 911 N.W.2d 905 (quoting *State v. Smith*, 452 N.W.2d 86, 87 (N.D. 1990)). The court must use an objective standard and consider the totality of the circumstances to determine if the officer had a reasonable and articulable suspicion. *Lies*, at ¶ 5. The court must determine whether "a reasonable person in the officer's position would be justified by some objective manifestation to suspect the defendant was, or was about to be, engaged in unlawful activity." *Taylor*, at ¶ 11 (quoting *Smith*, at 87).

[¶8]	"Information from an informant or tip may provide the factual basis for a stop if it provides the officer with a reasonable suspicion." *Knox*, 2016 ND 15, ¶ 8, 873 N.W.2d 664. The reliability of the informant is relevant in deciding whether there was reasonable suspicion. *Id.* Our cases have recognized there is an inverse relationship between the quantity and quality of the information, and the lesser the quality or reliability of the tip, the greater the quantity of information required to raise a reasonable suspicion. *Id.* "[I]nformation from an informant whose identity is easily ascertainable has a higher indicia of reliability than information obtained from a purely anonymous informant." *Id.* at ¶ 14 (quoting *City of Dickinson v. Hewson*, 2011 ND 187, ¶ 10, 803 N.W.2d 814). We have said citizen informants are presumed to be reliable. *State v. Ashby*, 2017 ND 74, ¶ 11, 892 N.W.2d 185.

[¶9]	In this case, the district court denied Hendrickson's motion to suppress, finding there was sufficient reasonable and articulable suspicion justifying the investigative

stop of Hendrickson's vehicle. The court found the 911 caller, an employee of Taco Johns, was able to provide detailed information describing the vehicle, the license plate number, the name of the driver, and that the driver was "beyond, beyond, beyond drunk." The court found the caller described in detail why she believed Hendrickson was drunk, including that Hendrickson slurred his speech, that he did not properly respond to questions concerning his order, and that his eyes were "both on and off and rolling to the back of his head." The court found the caller equivocated regarding whether Hendrickson was under the influence of alcohol as opposed to some other substance, but she was steadfast that Hendrickson was under the influence of something. The court also noted the caller was within a few feet of Hendrickson when she made the observations. The court found the information provided was very specific and detailed, and the information relayed was of classic signs of intoxication which are commonly known. The court further found police were able to verify some of the information the caller provided including the vehicle description, license plate, and identity of the driver, which provided further indication of the reliability of the information, and the officers were justified in relying on the information. The court concluded there was a reasonable and articulable suspicion justifying the investigative stop.

[¶10]   In *State v. Miller*, 510 N.W.2d 638 (N.D. 1994), this Court held information provided by a 911 caller was not sufficient to create a reasonable suspicion of potential criminal activity under the facts of that case. In *Miller*, the police dispatcher notified the officer that a caller reported a possible drunk driver in the Wendy's drive-thru lane, the caller identified himself to the dispatcher as "Jody with Wendy's," but the dispatcher did not tell the officer the caller identified himself. *Id.* at 639. The dispatcher gave the officer a description of the vehicle, including that the vehicle was a red pickup truck, the license plate number, and the location as second in line in the drive-thru lane; and the dispatcher told the officer the caller said the driver "could barely hold his head up." *Id.* The officer arrived at the scene and saw an orange pickup truck leaving the drive-thru lane, the officer followed the vehicle and verified

4

that the truck's license plate number matched the number reported by the dispatcher, and the officer stopped the vehicle without noticing anything usual about the truck's driving. *Id.* This Court held the tip was not reliable enough to raise a reasonable suspicion without the officer corroborating the reported suspicious behavior. *Id.* at 645. We said because anonymous telephone tips are of a lesser quality of reliability, a larger quantity of information is required to raise a reasonable suspicion and the officer must corroborate the tip by observing some behavior, either illegal or indicative of impairment, that alerts the officer to a possible violation. *Id.* at 642. We held information known to the dispatcher but not communicated to the officer, including the identity of the informant, could not be imputed to the officer, and therefore the caller would be treated as an anonymous informant. *Id.* at 644. We noted the caller misdescribed the vehicle and the caller's description of the driver's behavior as he "could barely hold his head up" gave only some indication of possible criminal activity. *Id.* We said the officer corroborated the location and license number of the vehicle, but the officer did not notice any traffic violations or any unusual driving before stopping the vehicle. *Id.* We explained the officer's observations of innocent facts did not meet the requirement that there be corroboration of suspicious conduct when the tip is a less reliable anonymous tip and the tip is also short on specifics. *Id.* We held "the combination of the anonymous tip and [the officer's] observations of innocent facts is insufficient to raise a reasonable and articulable suspicion." *Id.*

[¶11] This case is different from *Miller*. The caller in this case was not anonymous. Evidence established the caller was identified and officers went into the restaurant to speak to her when they arrived at the scene. Because the caller's identity was known, the information she provided has a higher indicia of reliability than information from an anonymous caller. *See Knox*, 2016 ND 15, ¶ 14, 873 N.W.2d 664. The caller also provided more information than the caller provided in *Miller*, including that the driver appeared to be "beyond, beyond, beyond drunk," the driver's speech was slurred, and his eyes were "on and off" and rolling to the back of his head. The caller provided

5

detailed information about her observations of the driver's behavior, which together were signs of intoxication. The greater quantity of information provided also made the tip more reliable than the tip in *Miller*.

[¶12] Furthermore, after this Court decided *Miller*, the United States Supreme Court decided *Navarette v. California*, 572 U.S. 393 (2014), which provides further guidance in deciding whether an officer has reasonable suspicion for an investigative stop based on a 911 caller's tip. In *Navarette*, the Court held the officer had reasonable suspicion under the totality of the circumstances based on an anonymous 911 call. *Id.* at 398, 404. The Court held the tip was reliable because the caller claimed an eyewitness basis of knowledge by reporting she had been run off the road by a specific vehicle, there was a short period of time between the incident and the call suggesting the caller had little time to fabricate the report, and a reasonable officer could conclude a false tipster would think twice before calling 911 because 911 has features that provide some safeguards against making false reports with immunity. *Id.* at 399-401. The Court said the tip created reasonable suspicion of drunk driving because running another car off the road is a significant indicator of drunk driving, and "an officer who already has such a reasonable suspicion need not surveil a vehicle at length in order to personally observe suspicious driving." *Id.* at 401-404.

[¶13] In this case, the information from the caller had a higher indicia of reliability because the caller's identity was known, she called 911 to report her suspicion that Hendrickson was intoxicated while he was still in the drive-thru lane, and she delayed giving him the food he ordered to keep him at that location until officers arrived. The caller also provided a large quantity of information, including a detailed description of the vehicle, the driver's identity, and detailed information about why she believed Hendrickson was intoxicated. The officers corroborated the location of the vehicle and the vehicle's description.

[¶14] Under the facts and circumstances of this case, we conclude the combination of the detailed information from the caller and the officer's corroboration of the

6

location and description of the vehicle was sufficient to raise a reasonable and articulable suspicion of potential criminal activity to justify an investigative stop. The officer was not required to perform any additional surveillance to further corroborate the caller's information. The district court did not err by denying Hendrickson's motion to suppress.

## III

[¶15] We affirm the judgment.

[¶16]         Lisa Fair McEvers
              Gerald W. VandeWalle, C.J.

**Crothers, Justice, specially concurring.**

[¶17] I agree with the result reached by the majority based on how the United States Supreme Court currently interprets the Fourth Amendment law of reasonable articulable suspicion in driving under the influence cases. I respectfully do not agree with the majority if they are engrafting that Fourth Amendment analysis onto our state constitutional analysis. *See* Majority opinion ¶ 7 (referencing both the Fourth Amendment of the United States Constitution and Article I, section 8, of the North Dakota Constitution). I also question whether our decision in *State v. Miller*, 510 N.W.2d 638 (N.D. 1994), has lingering viability in this area of law, and whether, as long as this Court cohesively applies Fourth Amendment analyses to search and seizure claims made under our State Constitution, *Miller* should be overruled and not merely distinguished.

## I

[¶18] This Court recently discussed reasonable articulable suspicion jurisprudence in the realm of driving under the influence stops. *See State v. Knox*, 2016 ND 15, ¶ 7, 873 N.W.2d 664. As discussed in *Knox*, in 2016 the United States Supreme Court

7

changed the legal landscape by permitting automobile stops based on anonymous calls to 911 operators about ongoing offenses such as driving under the influence. *See Navarette v. California*, 134 S.Ct. 1683, 1690-91 (2014).

[¶19]  In *Navarette*, the Supreme Court held information from an anonymous 911 caller, without more, was sufficiently reliable to provide the police with reasonable suspicion to justify an investigatory stop of a vehicle matching the caller's description.  Even though the officer did not observe any suspicious conduct before stopping the vehicle, the Court held the information from the 911 call was reliable because the caller claimed to be an eyewitness to a traffic offense that they concluded was indicative of impaired driving.  *Id.* at 1689.  In doing so, the Court narrowed its focus to "whether the 911 caller's report of being run off the roadway created reasonable suspicion of an ongoing crime such as drunk driving as opposed to an isolated episode of past recklessness."  *Id.* at 1690.

[¶20] The expansion in *Navarette* of what constitutes reasonable articulable suspicion to stop a suspected impaired driver seemingly cannot be reconciled with this Court's holding in *Miller*.  The caller in *Miller* was known to dispatch, and that information could have been imputed to officers on the scene.[1]

---

[1]I use the term "imputed" in the general sense. Our cases variously use terms and phrases to describe information passing between or credited to other law enforcement officials.  In *State v. Mische*, 448 N.W.2d 412, 413 (N.D. 1989), the Court discussed the "fellow officer" or "collective knowledge" rule).  This Court subsequently seems to have developed two branches of that concept.  One permits an officer to direct another officer to take action. *See, e.g.*, *State v. Kenner*, 1997 ND 1, ¶ 11, 559 N.W.2d 538 ("Where one officer relays a directive or request for action to another officer without relaying the underlying facts and circumstances, the directing officer's knowledge is imputed to the acting officer." (citations omitted)); *State v. Boline*, 1998 ND 67,  ¶ 37, 575 N.W.2d 906 (same); *City of Devils Lake v. Lawrence*, 2002 ND 31, ¶ 9, 639 N.W.2d 466 (same); *State v. Smith*, 2005 ND 21, ¶ 13, 691 N.W.2d 203 (same); *State v. Torkelsen*, 2006 ND 152, ¶ 12, 718 N.W.2d 22 (same).  In these cases, the question becomes whether the directing officer had sufficient evidence to take the directed action.  *United States v. Hensley*, 469 U.S. 221 (1985).

The other branch allows imputation of knowledge between officers but

[¶21]  Officers on the scene in *Miller* could have and no doubt did interview "Jody with Wendy's," just like officers here interviewed the caller from Taco John's.  Thus, I question whether we should struggle to distinguish *Miller* based on the facts here, instead of overruling *Miller* based on legal developments since 1994.  If we followed that course, our attention would instead focus on whether whoever constitutes law enforcement in a particular case had sufficiently reliable information (directly or by imputation) to make an investigative stop.


II

[¶22]  As discussed above, the United States Supreme Court's decision in *Navarette* changed search and seizure analysis, at least as applied to driving under the influence or continuing violation cases.  *Navarette*, 134 S.Ct. at 1690 n.2 ("Because we conclude that the 911 call created reasonable suspicion of an ongoing crime, we need not address under what circumstances a stop is justified by the need to investigate completed criminal activity.").  Traditionally, this Court has applied an identical search and seizure interpretation to the Fourth Amendment of the United States

---

requires actual communication of the information before the acting officer takes action. *State v. Miller*, 510 N.W.2d 638, 643 (N.D. 1994) ("We have found no law to support the proposition that information known to the dispatcher but not communicated to the investigating officer nevertheless should be imputed to the officer."); *Gabel v. North Dakota Dep't of Transp.*, 2006 ND 178, ¶ 11, 720 N.W.2d 433 ("We have upheld investigatory stops of vehicles when the stopping officer received information of illegal activity from other officers and the officer corroborated the tip with personal observations.") (citing *State v. Kenner*, 1997 ND 1, ¶ 12, 559 N.W.2d 538); *City of Minot v. Keller*, 2008 ND 38, ¶ 12, 745 N.W.2d 638 ("The communication requirement prevents unjustified police action from being taken in the hopes it is later validated by tallying the knowledge of every officer and agency involved in the case." (citations omitted)); *Ell v. Director*, 2016 ND 164, ¶ 10, 883 N.W.2d 464 ("[A]n officer may testify about imputed knowledge, including statements another officer made when the testimony about the statements is offered to establish probable cause or reasonable suspicion because the testimony is offered to establish the officer's knowledge and observations at the time of the stop or arrest. We have also said 'officer to officer communications are presumptively reliable.'") (citations omitted).

Constitution and Article I, section 8 of the North Dakota Constitution. However, separate treatment under each is permissible:

> "It is axiomatic our state constitution may provide greater protections than its federal counterpart."
>
> Both parties submitted well-developed briefs discussing whether Article I, Section 8 of the North Dakota Constitution affords [defendant] greater protection than provided by the Fourth Amendment to the United States Constitution. However, we need not decide whether to apply the state and federal constitutions differently because this is not a case where we would reach a different result. In this case, where the distinction is merely between the arrest of a person in the car and an arrest of a person recently vacating the car, we refuse to apply the North Dakota Constitution differently than the Federal Constitution.

*State v. Wanzek*, 1999 ND 163, ¶¶ 19-20, 598 N.W.2d 811 (citations omitted).

[¶23] As long as we interpret the North Dakota constitutional provision the same as the Fourth Amendment, we are bound by the United States Supreme Court's decision in *Navarette*. However, while not a question presented in this case, the *Navarette* dissent raises legitimate concerns about its majority opinion. Those concerns should make us at least question, in an appropriate case where we were asked, whether we should decouple our federal and state constitutional analysis in the area of driving under the influence investigative stops. If we chose that direction, we would not be alone in doing so. *See, e.g.*, *Commonwealth v. Depiero*, 42 N.E.3d 1123, 1128 (Mass. 2016) (Under state constitutional analysis, *Navarette* not followed because "we are not inclined at this time to attribute veracity to all 911 callers.").

[¶24] Daniel J. Crothers
Jerod E. Tufte
Jon J. Jensen
Gerald W. VandeWalle, C.J.

10